1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7    KAI LU,                                    Case No.  23-cv-02799-BLF

8                      Plaintiff,

9          v.                                    **ORDER DENYING MOTION FOR**
                                                 **TEMPORARY RESTRAINING ORDER**
10   VIVENTE 1, INC.,
                                                 [Re:  ECF No. 5]
11                     Defendant.

12

13          Before the Court is Plaintiff Kai Lu's motion for temporary restraining order ("TRO").

14   *See* ECF No. 5 ("Mot.").  On June 8, 2023, Plaintiff filed the instant motion seeking to enjoin

15   Defendant Vivente 1, Inc. ("Vivente") from evicting her.  *See* Mot. at 2-3.

16          The Court ordered Defendant to file a response.  ECF No. 8.  On June 12, 2023, Defendant

17   filed an opposition.  ECF No. 10.  For the reasons discussed below, Plaintiff's motion for TRO is

18   DENIED.

19   **I.     BACKGROUND**

20          Defendant Vivente is the landlord of the residential property at 2400 Enborg Lane #8, San

21   Jose, CA 95118 ("Premises").  ECF No. 1 ("Compl.") at 1.

22          Plaintiff originally leased Unit #26 subject to a written lease.  *See* Declaration of Dana

23   Wares, ECF No. 10-1 ("Wares Decl.") Ex. 1, Ex. 1.  On February 16, 2022, Plaintiff and

24   Defendant entered a temporary relocation agreement by which Plaintiff would temporarily move

25   into a two-bedroom unit while the original unit was being fixed.  *Id.*  On February 28, 2022,

26   Plaintiff submitted to Defendant a request for a reasonable accommodation—having a live-in aide.

27   *Id.*, Ex. 2.  On March 22, 2022, the repair on the original unit was complete, and Vivente

28   requested that Plaintiff move back to her original unit.  *Id.*, Ex. 1, Attachment 17.  On March 31,

1    2022, Vivente issued approval for Plaintiff's reasonable accommodation request for a live-in aide,

2    pending qualification of the live-in aide and completion of the required documentation.  *Id.*, Ex. 3.

3         On April 14, 2022, Defendant served Plaintiff a 30-day Notice to Permanently Perform

4    Covenant or Quit ("Notice"), requiring Plaintiff return to her original unit within thirty (30) days.

5    Wares Decl., Ex. 1, Ex. 2.  On May 12, 2022, Vivente informed Plaintiff that her original

6    reasonable accommodation request only contained the request for a live-in aide, not a request for a

7    second bedroom.  *Id.*, Ex. 4.  On May 27, 2022, Defendant again issued approval for Plaintiff's

8    reasonable accommodation request for a transfer to a two-bedroom unit subject to Plaintiff

9    providing the required documentation for a live-in aide.  *Id.*, Ex. 5.  On July 26, 2022, Defendant

10   filed an Unlawful Detainer ("UD") complaint.  *Id.* ¶¶ 2-3, Ex. 1.

11        On January 25, 2023, a jury trial on the UD began.  Wares Decl. ¶ 8.  The jury found in

12   favor of Defendant, and on February 8, 2023, judgment was entered.  *Id.* ¶ 8, Ex. 6.  As stated by

13   the judge in the trial, "the evidence at trial, as admitted by Lu in her testimony, was that Lu never

14   had and never hired a live-in aide and Lu had never provided Vivente 1 with a name or social

15   security number for a potential live-in aide."  *Id.*, Ex. 7 at 3:28-4:3.  The verdict form indicated

16   that Plaintiff failed to return to her original unit as required by the relocation agreement and said

17   failure was a substantial breach of the relocation agreement.  *Id.*, Ex. 6.

18        On February 15, 2023, Plaintiff filed a Notice of Appeal of the UD judgment in the

19   Appellate Division of the Superior Court of Santa Clara, which is currently pending.  Wares Decl.

20   ¶ 9.  On March 9, 2023, Plaintiff filed a Petition for Writ of Mandate in the Superior Court of

21   Santa Clara, Appellate Division challenging the Trial Court's Judgment.  *Id.* ¶ 10.  On April 4,

22   2023, a three-judge appellate judge panel denied Plaintiff's petition and further ordered "the

23   temporary stay of eviction is lifted as of March 31, 2023."  *Id.* ¶ 10, Ex. 8.  On June 7, 2023, the

24   clerk of the Santa Clara Superior Court issued a Remittitur-Civil deeming the April 4 Order to be

25   final.  *Id.*  On May 26, 2023, Plaintiff filed a Petition for Writ of Mandate and Immediate Stay in

26   Court of Appeal for the State of California, Sixth Appellate District, which was denied.  *Id.* ¶ 11,

27   Ex. 9.

28        On June 7, 2023, Plaintiff filed a Complaint in this Court.  *See* Compl.  The Complaint

United States District Court
Northern District of California

2

1  alleges the following causes of action: (1) violation of the Fair Housing Act, 42 U.S.C. § 3601 *et*

2  *seq.*; (2) violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (3) violation of the Fair

3  Housing Act, Cal. Gov't Code § 12955 *et seq.*; (4) violation of the Unruh Civil Rights Act, Cal.

4  Civil Code § 51; (5) negligence; (6) violation of the California Unfair Competition Law, Cal. Bus.

5  & Prof. Code § 17200 *et seq.*  Compl. at 2-6.  On June 8, 2023, Plaintiff filed the instant motion

6  for preliminary injunction.  *See* Mot.

## II.  LEGAL STANDARD

8         The standard for issuing a temporary restraining order is identical to the standard for

9  issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d

10  832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.

11  1320, 1323 (N.D. Cal. 1995).  An injunction is a matter of equitable discretion and is "an

12  extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

13  to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  A

14  plaintiff seeking emergency injunctive relief must establish "[1] that he is likely to succeed on the

15  merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

16  the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

17  *Winter*, 555 U.S. at 20.  "[I]f a plaintiff can only show that there are serious questions going to the

18  merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction

19  may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two

20  *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir.

21  2014) (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Likelihood of Success on the Merits

24         Plaintiff has not shown a likelihood of success on the merits.  *Winter*, 555 U.S. at 22.

25  First, Plaintiff cannot show a likelihood of success on the merits because the requested injunction

26  would constitute a collateral attack on a valid judgment.  *See* Opp. at 4-5.  Second, even were that

27  not the case, Plaintiff also cannot show a likelihood of success on any of her claims.  *See* Opp. at

28  7-10.

United States District Court
Northern District of California

### 1. Collateral Attack

First, Plaintiff cannot show a likelihood of success on the merits because the requested injunction would constitute a collateral attack on a valid judgment. *See* Opp. at 4-5. The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). "Federal courts are compelled by the 'full faith and credit' statute to give collateral estoppel and res judicata effects to the judgments of state courts." *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712-13 (9th Cir. 1992) (citing 28 U.S.C. § 1738 (1988)). A "court must treat a state court judgment with the same respect it would receive in the courts of the rendering state." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 578 (9th Cir. 2022). The Court therefore applies California law to determine the preclusive effect of a state court order. *Id.* (citing *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005)). Under California law, "[c]ollateral estoppel bars 'relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" *Wabakken v. California Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) (quoting *People v. Carter*, 36 Cal. 4th 1215, 1240 (2005)) (alterations in original).

The Court finds that all three elements of collateral estoppel are satisfied here with respect to the final judgment of the trial court. As to the first prong, the issue in the UD trial was whether the Notice was valid, and Plaintiff had the opportunity to present evidence relating to her reasonable accommodation. Wares Decl., ¶¶ 3-9, Ex. 7. The issues on appeal are about the reasonable accommodation and validity of the Notice. *Id.* As to the second prong, there was a final judgment on the merits in the earlier proceeding. And finally, as to the third prong, the parties here are identical to those in the state court proceeding.

### 2. Individual Claims

Even if the requested injunction was not precluded, Plaintiff still has not shown a

likelihood of success on the merits as to any of her six claims.

        a.   Federal Fair Housing Act and California Fair Employment and Housing Act claims

Plaintiff's first and third claims are for violation of the federal Fair Housing Act and California's Fair Employment and Housing Act ("FEHA").  Compl. at 2-5.  Federal law prohibits disability discrimination in the form of "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  The FEHA provides that it is unlawful " [f]or the owner of any housing accommodation to discriminate against . . . any person because of . . . disability."  Cal. Gov't Code § 12955.  And "discrimination" is defined to include a "refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."  *Id.* § 12927(c)(1).

An accommodation is reasonable when it imposes no "fundamental alteration in the nature of the program" or "undue financial or administrative burdens."  *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410, 412 (1979).  Here, Defendant has shown that it approved Plaintiff's reasonable accommodation request twice.  *See* Wares Decl. ¶¶ 5-7, Exs. 3-5.  On March 31, 2022, Defendant approved Plaintiff's reasonable accommodation request for a live-in aide pending qualification of the live-in aide and completion of requisite documentation.  *Id.* ¶ 5, Ex. 3.  On May 27, 2022, Defendant issued approval for Plaintiff's reasonable accommodation request to transfer to a two-bedroom unit, conditioned on Plaintiff completing the required paperwork for the live-in aide.  *Id.* ¶¶ 6-7, Exs. 4-5.  The judge in the state court proceeding stated that Plaintiff never hired a live-in aide and never provided a name or social security number to Defendant.  *Id.*, Ex. 7 at 3:28-4:3.  Because Defendant did not deny a reasonable accommodation request, Plaintiff has not shown a likelihood of success on the merits of these claims.

        b.   Rehabilitation Act of 1973 claim

Plaintiff's second claim is for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Compl. at 4.  Section 504 prohibits discrimination based on disability by any

1  federally funded programs or activities.  *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th

2  Cir. 2017).   "A plaintiff bringing suit under section 504 . . . must show: (1) she is a qualified

3  individual with a disability; (2) she was denied 'a reasonable accommodation that [she] needs in

4  order to enjoy meaningful access to the benefits of public services;' and (3) the program providing

5  the benefit receives federal financial assistance."  *A.G. v. Paradise Valley Unified Sch. Dist. No.*

6  *69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097

7  (9th Cir. 2010)).  As discussed above, Plaintiff has not shown she was denied a reasonable

8  accommodation.  Therefore, Plaintiff cannot show a likelihood of success on the merits as to this

9  claim.

10              c.   Unruh Act claim

11       Plaintiff's fourth claim is for violation of the Unruh Civil Rights Act; she alleges that

12  Defendant discriminated and retaliated against her on the basis of her disability.  Compl. at 5.

13  Defendant argues that the Unruh Act does not provide for reasonable accommodations and that it

14  does not apply to residential apartment complexes.  *See* Opp. at 8.  These assertions may be true

15  depending on which section of the statute Plaintiff is proceeding under.

16       The Court will start with Section 51(f), which states: "A violation of the right of any

17  individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall

18  also constitute a violation of this section."  Cal. Civ. Code § 51(f).  "[T]he ADA only applies to

19  public accommodations, which include hotels and motels, but not residential apartment

20  complexes."  *Glasby v. Mercy Housing, Inc.*, No. 17-cv-02153-DMR, 2017 WL 4808634, at *5

21  (N.D. Cal. Oct. 25, 2017) (citing 42 U.S.C. §§ 12182(a), 12181(7)(A)).  Therefore, Plaintiff's

22  claim would fail to the extent it is brought under Section 51(f).

23       But Plaintiff's claim could be under Section 51(b), which provides: "All persons within the

24  jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion,

25  ancestry, national origin, disability, medical condition, genetic information, marital status, sexual

26  orientation, citizenship, primary language, or immigration status are entitled to the full and equal

27  accommodations, advantages, facilities, privileges, or services in all business establishments of

28  every kind whatsoever."  Cal. Civ. Code § 51(b).  And the "the California Supreme Court [has]

1   held that [a] defendant apartment complex qualified as a 'business establishment' under the Unruh

2   Act." *Glasby*, 2017 WL 4808634, at *4 (citing *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731

3   (1982)).  The "Unruh Act applies to the 'business of renting housing accommodations.'"  *Id.*

4   (quoting *Marina Point, Ltd.*, 30 Cal. 3d at 731); *see also Holland v. Related Cos., Inc.*, No. 15-cv-

5   03220-JSW, 2016 WL 3669999, at *3 n.6 (N.D. Cal. July 11, 2016) (Defendants do not dispute

6   that the Unruh Act applies generally to 'the business of renting housing accommodations.'"

7   (quoting *Marina Point, Ltd.*, 30 Cal. 3d at 731)).  Therefore, to the extent Plaintiff's claim is

8   brought under Section 51(b), it would not fail on the basis that it is being brought as to a

9   residential apartment complex.  And "[s]everal courts in this circuit have recognized that section

10  51(b) can encompass a claim for intentional discrimination in the form of a failure to provide

11  reasonable accommodation to a person with a disability."  *Glasby*, 2017 WL 4808634, at *6.  But

12  Plaintiff still cannot show a likelihood of success on the merits.  "To allege an Unruh Act claim

13  'separate from an ADA claim,' the plaintiff 'must allege intentional discrimination.'"  *Id.* at *7

14  (quoting *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1051 (N.D. Cal. Mar. 14,

15  2012)).  Because Defendant granted Plaintiff's reasonable accommodation requests, she cannot

16  show a likelihood of success on the merits.

17          Finally, in the motion for TRO, Plaintiff also cites to California Civil Code §

18  54.1(b)(3)(B).  *See* Mot. at 8-9.  While this section was not cited in the Complaint and is not

19  strictly part of the Unruh Act, because Plaintiff is pro se, the Court will address it.  *See Holland*,

20  2016 WL 3669999, at *5 n.8 ("Although the court referred to the Unruh Act, the provision in [sic]

21  cited in support of its conclusion was California Civil Code section 54.1(b), which falls within the

22  CDPA.").  This section provides: "A person renting, leasing, or otherwise providing real property

23  for compensation shall not refuse to make reasonable accommodations in rules, policies, practices,

24  or services, when those accommodations may be necessary to afford individuals with a disability

25  equal opportunity to use and enjoy the premises."  Cal. Civ. Code § 54.1(b)(3)(B).  For the reasons

26  stated above, Plaintiff has not shown a failure to provide a reasonable accommodation, and she

27  therefore cannot show a likelihood of success on the merits as to a claim under this section.

28

United States District Court
Northern District of California

### d.  Negligence claim

Plaintiff's fifth claim is for negligence.  Compl. at 5-6.  She alleges that Defendant owed "a duty to operate [the housing complex] in a manner that was free from unlawful discrimination and retaliation, and to hire, train, supervise, and discipline its employees to fulfill that duty."  *Id.* She alleges that Defendant was negligent by failing to adequately train, hire, supervise, and discipline employees so as to ensure compliance with the requirements of federal and state fair housing laws.  *Id.* at 6.  Because Plaintiff has not shown a likelihood of success on the merits as to her claims for violation of the state and federal fair housing laws, she also cannot show a likelihood of success on the merits of the negligence claim for failure to train, hire, supervise, and discipline employees as to the requirements of those laws.

### e.  UCL claim

Finally, Plaintiff brings a claim for violation of California's Unfair Competition Law ("UCL").  Compl. at 6.  Plaintiff has not alleged any unfair business practices by Defendant.  She therefore cannot show a likelihood of success on the merits.

### 3.  Conclusion

For the reasons discussed above, the Court determines that Plaintiff has not shown a likelihood of success on the merits.  Plaintiff has also not met the lower standard of serious questions going to the merits.  Such a conclusion is dispositive of the motion for TRO.

### B.  Timeliness

Additionally, the Court finds that Plaintiff delayed in seeking emergency relief from this Court.  "[A] plaintiff's delay in seeking relief weighs against granting a TRO."  *Perez v. City of Petaluma*, 2021 WL 3934327, at *1 (N.D. Cal. Aug. 13, 2021) (denying motion for temporary restraining order where plaintiff waited "a full month" after the issuance of the challenged city resolution to seek a TRO).  Delays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny emergency relief based on delays of as little as ten days.  *See Oracle Am., Inc. v. Myriad Grp. AG*, 2011 WL 13154031, at *1 (N.D. Cal. Dec. 1, 2021) (three-and-a-half month delay); *Devashayam v. DMB Capital Grp.*, 2017 WL 6547897, at *4 (S.D. Cal. Dec. 20, 2017) (one-month delay); *Lee v. Haj*, 2016 WL 8738428, at *2

8

(E.D. Cal. Feb. 22, 2016) (one-month delay); *Altman v. County of Santa Clara*, No. 4:20-cv-02180-JST, ECF No. 22 at 2 (ten-day delay).  Here, Plaintiff filed for relief over a year after receiving the Notice and over ten months after the UD complaint was filed.  *See* Wares Decl. ¶¶ 2-3, Ex. 1.  This delay is another ground for denying the motion for a TRO.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the motion for a temporary restraining order is DENIED.  This denial is WITHOUT PREJUDICE to filing a motion for preliminary injunction.

Dated:  June 12, 2023

_____
BETH LABSON FREEMAN
United States District Judge